State *v.* Pool.

## THE STATE *v.* S. A. POOL.

CRIMINAL LAW. *Discharge of the jury.* A jury in a criminal cause may be discharged by the Court without the consent of the accused, where they have had a sufficient length of time to deliberately, carefully and fully consider the entire case as presented by its facts and as governed by the rules of law given in charge by the Court, and there is no possibility of an agreement upon and return of a verdict, but the Court should be satisfied of the impossibility of an agreement; and the reasons for such conclusion by the Court should be set out in its order of discharge, so that a revising Court may consider them upon a plea of "once-in jeopardy."

### FROM SHELBY.

Appeal in error from the Criminal Court of Shelby County. L. B. HORRIGAN, J.

Attorney-General LEA for The State.

LUKE E. WRIGHT for Pool.

TURNEY, J., delivered the opinion of the Court.

The defendant was indicted in the Criminal Court of Shelby County for producing an abortion. At the January term, 1880, he was arraigned and put upon his trial. After the evidence had been introduced, and the charge of the Court submitted to the jury, it retired, on Tuesday, January 27th, to consider of its verdict. From time to time the jury reported to the Court that it could not

agree, and never would agree. The jury was kept considering the case for two days after so reporting that it was impossible to arrive at a verdict.

On the 31st day of January the jury was sent for by the Court. The Court inquired if it had agreed upon a verdict. The reply was, "No, and there is no probability or possibility of ever agreeing upon a verdict in the case." The Court inquired whether or not there had been any change since the jury commenced to consider of its verdict. The jury replied, "No; the jury stands now the same as on the first ballot, and that each of the jurors was satisfied that the jury could never agree."

"After examining the jury fully, the Court was satisfied there was no probability of ever securing or obtaining a verdict from said jury in said case, and that to keep said jury longer in said case would be a waste of public money and a useless hardship upon the jury, and announced its purpose to discharge it."

The defendant and his counsel objected, and insisted upon keeping the jury longer.

The Court overruled the objection, withdrew a juror and ordered a mistrial.

Defendant excepted.

To any further prosecution the defendant interposed a plea of "once in jeopardy," to which was demurrer by the State. The demurrer was overruled, plea sustained and defendant discharged.

The State appealed.

The judgment of the Court is based, as it re-
cites, upon the case of *Mahala* v. *State,* 10 Yer.,
535. We admit this is a very strong case in
support of the defendant's claim to a discharge.
That case, however, admits that there are cases in
which the Court may discharge a jury in criminal
cases of any grade, notwithstanding that provision
of our Constitution, "that no man shall be twice
put in jeopardy of life or limb for the same
offense."

Now, if exceptions can be made at all, it is
quite certain that all such exceptions · cannot be
embraced in any one case or any number of cases,
but that the exceptions which may exist are to be
determined upon only when the facts are fully
known to and understood by the Court. Other-
wise, instead of the general, broad, comprehensive
constitutional inhibition just quoted, we would have
well defined classes, fixed by the Constitution, to
which the rule should apply. If that provision
can be relaxed by construction at all, the relaxa-
tion must be given by the Courts in each case,
after all the materials of that case are prepared
to invoke judgment. No general rule can be laid
down for the government of all cases.

In the case of Mahala, Judge Turley says that
the causes which create the necessity for a dis-
charge of the jury may be classed under three
heads. The third one, he says, "is where there is
no possibility for the jury to agree and return a
verdict." Under this last head he says: "A jury

may also not be able to agree because their minds cannot come to the same conclusion from the facts submitted to their consideration." This, he says. while it is a case of moral impossibility, does not constitute a necessity for the discharge of a jury before the time arrives when the Court must adjourn. He admits the power of the Court to discharge when it must, by law, adjourn before the jury can agree.

Let us test these rules by the case before us in connection with a case in a smaller jurisdiction. In Shelby county there are, by law, two Criminal Courts. The one at Memphis is, we may say, continuously in session. The one at Bartlett for only a few days or weeks, at three stated periods during the year. The jurisdiction of the Court at Memphis is co-extensive with the county; that of Bartlett is confined to certain civil districts. Now, if a man violates the law within the Bartlett jurisdiction, and is indicted and put upon his trial at Bartlett, it may be, under the rule laid down by Judge Turley, that the Judge of that Criminal Court, who is also Judge of the Probate Court at Memphis will, by law, have to adjourn the one Court to preside at the other, and for this cause alone may discharge the jury, though the case may not have been under its consideration but a few days, or even but a few hours, while if the indictment had been preferred at Memphis he could not legitimately discharge it in less than four months if it failed to agree.

State *v.* Pool.

Again, contrast the result of the rule in its operation in the Memphis Criminal Court with its operations in some Circuit Court districts of the State. In some of the counties of the latter the Court can only continue for one week for the trial of both civil and criminal causes. There, if a criminal case is taken up late in the week, or, as frequently happens, is of a character to consume the week, or nearly so, in its trial, then we will have the anamoly that, in one county in the State the courts are compelled by law to retain a jury for three or four months, while in others it is compelled to discharge it in a few hours after the case has been submitted to it. So, we cannot think the rule, or rather the exceptions thereto, must be so rigidly interpreted as is done in *Mahala* v. *State.* We think the right rule is, that where there is no possibility to agree upon and return a verdict, the Court may discharge it without the consent of the accused. As said in many or quite all the cases admitting the power, "it is a delicate and highly important trust." We say it should be exercised with great and deliberate caution, and with the sole purpose and view of subserving public interest, and should never be used arbitrarily or rashly. The causes for its exercise should be plain and obvious. The Courts must be extremely careful how they interfere with a jury in charge of a criminal case.

But when it does appear that a jury has had, as in this case, a sufficient length of time to de-

liberately, carefully and fully consider the entire case as presented by its facts, and as governed by the rules of law given in charge by the Court, and there is no possibility of its agreeing upon and returning a verdict, then we think the rule applies and the jury may be discharged. The Court must not only be satisfied of the impossibility of an agreement to a verdict, but the reasons for such conclusion should be set out in its order of discharge, that a revising court may consider them.

In this case the jury was out considering the case from the 27th to the 31st. It several times reported the impossibility of agreement, and, as appears from the record, the Court, before discharging, made a careful and critical inquiry by many questions, and was convinced of the utter impossibility of obtaining a verdict. The record sustains the correctness of his conclusion.

If, then, the impossibility did exist, what necessity was there to keep the jury together? How could a discharge then work any more injury to the accused than would a discharge at the end of months for the same cause? What good reason can be assigned for postponing the doing of a thing that must eventually be done? Is the impossibility to agree because of the nearness of the adjournment of the term any stronger than that of a radical and irreconcilable difference of opinion among jurors as to the facts and law of a case, and their respective bearings upon the case?

State *v.* Pool.

If there is an impossibility of an agreement for any cause satisfactory to the minds and consciences of the Court and jury, acting and speaking in their sworn capacities, in an effort to impartially perform public duties, can we rightfully say that such impossibility may operate as an impossibility if the predicate of one certain cause, but shall not so operate if it be in affirmance of one or more causes equally controlling in influence? We are unable to take such distinctions.

. The origin **of** the constitutional provision was the desire to keep out of our institutions a practice that had at one time grown up in England of trying offenders, or persons so accused, as often as might please those who chose to prosecute, without regard to former trials, verdicts and judgments, and was, as I think, meant to control in . cases where a trial had once been had and a verdict rendered, or even prevented by fraud on, or improper interference with the rights of the accused.

I am unable to understand how one has been once in jeopardy in the sense claimed for the term here, so long as a verdict has not been rendered, and the jury has not been able, after a full and thorough investigation, to agree.

Reversed and remanded for trial.